**In re the Matter of CUSTODY OF J.V.,**

**Dana V., Appellant–Respondent,**

v.

**Joan L., Appellee–Petitioner.**

No. 27A02–0903–JV–232.

Court of Appeals of Indiana.

July 7, 2009.

Shane Eric Beal, Marion, IN, Attorney for Appellant.

Larry Don Gallaway, Jr., Marion, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Joan L., the paternal grandmother of J.V. ("Grandmother"), filed a Petition to Establish De Facto Custodian and Motion for Custody of J.V. in Grant Superior Court. Dana V., J.V.'s mother ("Mother"), objected to the petition. The trial court granted Grandmother's petition and awarded custody of J.V. to Grandmother. Mother appeals and argues that the trial court erred when it granted Grandmother's petition. Concluding that the trial court failed to make the requisite findings that awarding custody of J.V. to Grandmother was in J.V.'s best interests, we remand for proceedings consistent with this opinion.

### Facts and Procedural History

J.V. was born on July 18, 2005. Grandmother's son, Eric L., is believed by all parties to be J.V.'s father, but his paternity has never been established. Between August 2005 and May 2006, Mother, Eric L., and J.V. resided in Grandmother's home. During that time, Grandmother was J.V.'s primary caretaker.

In May 2006, Mother, Eric L., and J.V., moved in with Grandmother's daughter, who lives three houses down from Grandmother. This arrangement lasted for approximately one year, and during that time, Grandmother cared for J.V. three to four days per week. Grandmother provided all basic necessities for J.V. while J.V. was in Grandmother's home, including diapers, food, and clothing. Grandmother also paid a babysitter if she had to work

while J.V. was in her care and if J.V.'s aunt was unable to care for her.

On November 15, 2007, when J.V.'s aunt arrived to pick J.V. up from Mother's home, she observed a cigarette burn to J.V.'s eye. J.V.'s aunt called Grandmother, who took J.V. to the emergency room. Mother did not go to the hospital with J.V. and Grandmother.

That same day, Grandmother filed her Petition to Establish De Facto Custodian and Motion for Custody of J.V. A hearing was held shortly thereafter, and the court appointed a Guardian Ad Litem ("the GAL") to evaluate the custody situation. Counsel was appointed for Mother on April 11, 2008.

A hearing was held on August 15, 2008. The GAL's report was entered into evidence and the GAL recommended that custody of J.V. be awarded to Grandmother. On November 14, 2008, the trial court issued the following order:

1. That [Grandmother] meets the requirements of I.C. 31–9–2–35.5 and is named as Defacto Custodian of [J.V.].

2. The Referee now adopts the recommendations of the Guardian Ad Litem as follows:

A. Legal and physical custody of the child is awarded to the Defacto Custodian, [Grandmother].

B. [Mother] shall have parenting time with the child pursuant to the Parenting Time Guidelines with the following restrictions: No overnight parenting time at present and no contact with [Eric L.] or Brayton Tedder.

3. Both parties are ordered to refrain from smoking near the child.

Appellants App. p. 26. Mother now appeals.

## Discussion and Decision

Initially, we observe that our court's decision in *In re L.L. & J.L.*, 745 N.E.2d 222 (Ind.Ct.App.2001), *trans. denied*, provides a framework for trial courts to apply when considering a custody dispute between a natural parent and a third-party.

First, there is a presumption in all cases that the natural parent should have custody of his or her child. The third party bears the burden of overcoming this presumption by clear and cogent evidence. Evidence sufficient to rebut the presumption may, but need not necessarily, consist of the parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. However, a general finding that it would be in the child's "best interest" to be placed in the third party's custody is not sufficient to rebut the presumption. If the presumption is rebutted, then the court engages in a general "best interests" analysis. The court may, but is not required to, be guided by the "best interests" factors listed in Indiana Code section 31–14–13–2, 31–14–13–2.5, 31–17–2–8, and 31–17–2–8.5, if the proceeding is not one explicitly governed by those sections.

If a decision to leave or place custody of a child in a third party, rather than a parent, is to be based solely upon the child's "best interests," as opposed to a finding of parental unfitness, abandonment, or other wrongdoing, such interests should be specifically delineated, as well as be compelling and in the *"real and permanent"* interests of the child. As we have previously observed,

'If the "best interest rule" was the only standard needed without anything else, to deprive the natural par-

ent of custody of his own child, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of natural parents. In other words, a child might be taken away from the natural parents and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the "best interest" of the child would be satisfied by being placed with a third party.'

This observation is entirely consistent with the views of the Supreme Court, which has stated that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made."

*Id.* at 230–31 (citation omitted and emphasis in the original). *See also K.I. ex rel. J.I. v. J.H.,* 903 N.E.2d 453, 458 (Ind.2009) (quoting *In re Guardianship of B.H.,* 770 N.E.2d 283, 287 (Ind.2002) ("[B]efore placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement.... [The issue] is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person.")).

In this case, the trial court determined that Grandmother met the requirements to be named J.V.'s de facto custodian. Indiana Code section 31–9–2–35.5 (2008) defines a de facto custodian as "a person who has been the primary caregiver for, and financial support of, a child who has

resided with that person for at least: (1) six (6) months if the child is less that three (3) years of age; or (2) one (1) year if the child is at least three (3) years of age." A "de facto custodian" must be made a party to a custody proceeding following a paternity determination, pursuant to Indiana Code section 31–14–13–2.5(c), or in a marital dissolution action, pursuant to Indiana Code section 31–17–2–8.5(c).

Once a court determines a "de facto custodian" exists and that individual has been made a party to a custody proceeding, in addition to the usual "best interests" of the child factors contained in Indiana Code sections 31–14–13–2 and 31–17–2–8, the court shall consider the following factors in determining the child's best interests:

(1) The wishes of the child's de facto custodian.

(2) The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.

(3) The intent of the child's parent in placing the child with the de facto custodian.

(4) The circumstances under which the child was allowed to remain in the custody of the de facto custodian, including whether the child was placed with the de facto custodian to allow the parent seeking custody to:

(A) seek employment;

(B) work; or

(C) attend school.

Ind.Code §§ 31–14–13–2.5(b) and 31–17–2–8.5(b). Finally, "[t]he court shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child." Ind. Code §§ 31–14–13–2.5(d) and 31–17–2–8.5(d).

■ The evidence supports the trial court's conclusion that Grandmother is

J.V.'s "de facto custodian." J.V. resided in Grandmother's home for ten months between August 2005 and May 2006. During this time, Grandmother was J.V.'s primary caretaker and provided basic necessities for J.V., including food, diapers, and clothing. Mother, J.V., and Eric L. moved to Grandmother's daughter's home, three houses down, in May 2006 and lived there for approximately one year. During that time, J.V. continued to reside with Grandmother at least three to four days per week. In May 2007, Mother and J.V. moved out of that home, but J.V. continued to stay with Grandmother at least three to four days per week. Grandmother provides financial support for J.V., takes her to doctor's appointments, and pays for babysitters during times when Grandmother is working.

 But while this evidence supports the trial court's determination that Grandmother is J.V.'s "de facto custodian," the trial court was also required to consider whether awarding custody of J.V. to Grandmother is in J.V.'s best interests. In its order awarding custody of J.V. to Grandmother, the trial court failed to make this determination. Although there is evidence in the record suggesting that awarding custody of J.V. to Grandmother is in J.V.'s best interests, we remand this case to the trial court with instructions to enter the findings required to support its custody determination. Such findings are particularly important in this case given the significant burden a third party must overcome to rebut the presumption that the natural parent should have custody of his or her child. *See B.H.*, 770 N.E.2d at 287 ("A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required.")

Remanded for proceedings consistent with this opinion.

RILEY, J., and KIRSCH, J., concur.